# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD BUTLER BURTON, | : | Civil No. 3:23-cv-436 |
| | : | |
| Petitioner | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| SUPERINTENDENT GORLEY, *et al.*, | : | |
| | : | |
| Respondents | : | |

## MEMORANDUM

Petitioner Ronald Burton ("Burton") filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a judgment and conviction imposed in the Court of Common Pleas of Dauphin County, Pennsylvania. (Doc. 1). For the reasons set forth below, the Court will deny the habeas petition and a certificate of appealability will not issue.

## I.    Background[1]

In January of 2010, Burton was charged with homicide, and several other crimes, related to the shooting death of Brandon Granthon on May 5, 2009. *See Commonwealth v. Burton*, 283 A.3d 347 (Table), 2022 WL 2523158, *1 (Pa. Super. 2022). At trial, the

---

[1]    A federal habeas court may take judicial notice of state court records. *See Zedonis v. Lynch*, 233 F. Supp.3d 417, 422 (M.D. Pa. 2017) (Caldwell, J.) (citing *Pension Benefit Guar. Corp. v. White Consul. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993) and *Dean v. Copozza*, No. Civ. A. 13-41, 2013 WL 1787804, at *1 (W.D. Pa. Apr. 10, 2013) ("Pennsylvania's Unified Judicial System provides online access to the docket sheets for criminal cases, and this Court may take judicial notice of those public dockets."). Accordingly, in reviewing this petition, the Court takes judicial notice of the publicly available dockets of criminal and collateral post-conviction proceedings in the Court of Common Pleas of Dauphin County, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court.

Commonwealth presented many witnesses, including an individual named Preston Burgess. *Id.* Burgess testified that he arranged a deal for Burton to sell Granthon crack cocaine, which took place on May 4, 2009. *Id.* Shortly after the transaction, Burgess contacted Burton because Granthon (the victim) believed that Burton had shorted Granthon on the drugs. *Id.* Burgess testified that Burton agreed to refund Granthon his money. *Id.* According to Burgess, Burton was at Burgess's house and became angry when Granthon called Burgess and asked Burgess to have Burton show him the "refund money." *Id.* Burton left Burgess's house with a man named Slim to find Granthon. *Id.* A few minutes after Burton left the house, Burgess went to a nearby convenience store, where he heard several gunshots. *Id.*

On January 27, 2011, following a jury trial, Burton was found guilty of first-degree homicide, conspiracy, possession with intent to deliver, illegally possessing a firearm, carrying a firearm without a license, and recklessly endangering another person. *Commonwealth v. Burton*, No. CP-22-CR-0005456-2009 (Pa. Ct. Com. Pl. Dauphin Cnty.). The trial court sentenced Burton to, *inter alia*, life in prison on the homicide charge. *Id.*

Burton filed a notice of appeal with the Pennsylvania Superior Court. *See Commonwealth v. Burton*, 1873 MDA 2016 (Pa. Super. July 26, 2017). On January 20, 2012, the Superior Court vacated Burton's judgment of sentence on the homicide charge and remanded for a new trial on that charge only. *See Commonwealth v. Burton*, 385 MDA 2011 (Pa. Super. Jan. 20, 2012); *see also Commonwealth v. Burton*, 2022 WL 2523158, at

*2. The Superior Court also vacated the sentences on Burton's remaining five convictions on the basis that the decision could alter the trial court's overall sentencing scheme. *See Commonwealth v. Burton*, 2022 WL 2523158, at *2. The Superior Court remanded for resentencing on those five convictions. *Id.*

The Commonwealth did not retry Burton on the homicide charge. *Id.* On March 30, 2012, the trial court resentenced Burton on the remaining five convictions, but because Burton's petition for allowance of appeal from the Superior Court's January 20, 2012 decision was still pending, that sentence was declared a nullity. *See Commonwealth v. Burton*, No. CP-22-CR-0005456-2009; *Commonwealth v. Burton*, 385 MDA 2011 (Pa. Super.). Burton filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which was denied. *Commonwealth v. Burton*, 131 MAL 2012 (Pa.). On October 2, 2012, the trial court resentenced Burton to an aggregate sentence of 22½ to 50 years' imprisonment. *Commonwealth v. Burton*, No. CP-22-CR-0005456-2009. Burton filed an appeal with the Superior Court. *Commonwealth v. Burton*, 1936 MDA 2012 (Pa. Super.). On July 26, 2013, the Superior Court affirmed the judgment of sentence and concluded that Burton had not preserved his claims challenging the discretionary aspects of sentence at the resentencing hearing or in a post-sentence motion. *Commonwealth v. Burton*, 2013 WL 11257090 (Pa. Super.).

On March 27, 2014, Burton filed a *pro se* petition for post-conviction collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. §§ 9541-46,

3

seeking reinstatement of his right to file a post-sentence motion *nunc pro tunc*. *See Commonwealth v. Burton*, 2016 WL 920094, *1 (Pa. Super. 2016). Burton subsequently retained private counsel, who filed a supplemental PCRA petition in December of 2014. *Id.* On February 10, 2015, the PCRA court granted the petition in part and denied it in part. *Id.* Specifically, the order granted Burton leave to file a post-sentence motion *nunc pro tunc*. The remainder of the petition was denied. *Id.*

On March 10, 2015, Burton filed a post-sentence motion with the trial court and a notice of appeal from the February 10, 2015 order. *Id.* The PCRA court permitted Burton's private counsel to withdraw and appointed appellate counsel. *Id.* On March 10, 2016, the Superior Court affirmed the part of the PCRA court's February 10, 2015 order restoring Burton's direct appeal rights *nunc pro tunc*. *Commonwealth v. Burton*, 457 MDA 2015, 2016 WL 920094. The Superior Court also vacated the remainder of that order on the basis that once the PCRA court reinstated Burton's direct appeal rights, it no longer had jurisdiction to address the merits of any remaining claims. *Id.* The Superior Court quashed the appeal to the extent that it sought to challenge the disposition of the post-sentence motion, as the motion was still pending in the trial court. *Id.*

On March 18, 2016, the trial court entered an order confirming the denial of Burton's *nunc pro tunc* post-sentence motion by operation of law pursuant to Pennsylvania Rule of

Criminal Procedure 720(B)(3)(a).[2]  *Commonwealth v. Burton*, No. CP-22-CR-0005456-2009.

Burton filed a direct appeal, but subsequently withdrew the appeal.  *Commonwealth v.*

*Burton*, 636 MDA 2016 (Pa. Super.).

On September 29, 2016, the trial court resentenced Burton to an aggregate term of

22½ to 45 years' incarceration.  *Commonwealth v. Burton*, No. CP-22-CR-0005456-2009.

On October 11, 2016, the trial court denied Burton's post-sentence motion for modification

of sentence.  *Id.*  Burton timely appealed on November 4, 2016.  *Commonwealth v. Burton*,

1873 MDA 2016 (Pa. Super.).  On July 26, 2017, the Superior Court affirmed the judgment

of sentence after rejecting Burton's three claims challenging the discretionary aspects of the

sentence.  *Commonwealth v. Burton*, 1873 MDA 2016, 2017 WL 3172598 (Pa. Super.).

The Pennsylvania Supreme Court denied Burton's petition for allowance of appeal.

*Commonwealth v. Burton*, 573 MAL 2017 (Pa.).

Burton then filed a timely *pro se* PCRA petition, alleging three claims of prior

counsels' ineffectiveness.  *Commonwealth v. Burton*, No. CP-22-CR-0005456-2009.

Counsel was appointed counsel, and counsel filed a supplemental PCRA petition.  *Id.*  The

PCRA court ultimately dismissed the petition.  *Id.*  Burton filed an appeal to the Superior

Court and sought to proceed *pro se*.  *Id.*  Following a hearing, the PCRA court granted

Burton's request to proceed *pro se*.  *Id.*  On July 7, 2022, the Superior Court affirmed the

---

[2]  Pennsylvania Rule of Criminal Procedure 720(B)(3)(a) provides that if that trial judge "fails to decide the [post-sentence] motion within 120 days, or to grant an extension…the motion shall be deemed denied by operation of law."  *See* PA. R. CRIM. P. 720(B)(3)(a).

order of the PCRA court dismissing the petition. *Commonwealth v. Burton*, 283 A.3d 347

(Table), 2022 WL 2523158 (Pa. Super. July 7, 2022). The Pennsylvania Supreme Court

subsequently denied Burton's petition for allowance of appeal. *Commonwealth v. Burton*,

370 MAL 2022, 293 A.3d 248 (Table) (Pa.).

Thereafter, Burton timely filed the instant petition pursuant to 28 U.S.C. § 2254.

(Doc. 1).

## II.    <u>Habeas Claims Presented for Federal Review</u>

Burton seeks habeas relief based on the following grounds:

- Ground One: The evidence was insufficient to sustain his conviction for conspiracy to commit first-degree homicide.

- Ground Two: Trial counsel was ineffective for failing to object to a jury instruction on persons not to possess firearms.

- Ground Three: Trial counsel was ineffective for failing to object to a jury instruction on accomplice liability for conspiracy to commit first-degree homicide.

- Ground Four: Trial counsel failed to conduct an independent investigation of a witness.

- Ground Five: The PCRA court erred in denying a new trial based on newly discovered evidence.

- Ground Six: Trial counsel was ineffective for failing to request a direct appeal on all charges.

- Ground Seven: Trial counsel's alleged ineffective assistance, in combination, cumulatively caused him prejudice.

(Doc. 1, at 5-15).

III.   **Legal Standards**

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").   A habeas corpus petition pursuant to § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement.   *Preiser v. Rodriguez*, 411 U.S. 475, 498-99, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).   "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."   *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).   Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 68.

A.   Exhaustion and Procedural Default

A habeas petitioner must exhaust state court remedies before obtaining habeas relief.   28 U.S.C. § 2254(b)(1)(A).   The traditional way to exhaust state court remedies in Pennsylvania was to fairly present a claim to the trial court, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court.   *See Evans v. Court of Common Pleas, Delaware County*, 959 F.2d 1227, 1230 (3d Cir. 1992).   However, in light of Pennsylvania Supreme Court Order No. 218, issued May 9, 2000, ("Order No. 218"), it is no longer necessary for Pennsylvania inmates to seek allocatur from the Pennsylvania Supreme Court in order to exhaust state remedies under 28 U.S.C. § 2254(c).   *See Lambert v.*

7

*Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004) ("We now hold that Order No. 218 renders review from the Pennsylvania Supreme Court 'unavailable' for purposes of exhausting state court remedies under § 2254(c).").[3] The habeas petitioner has the burden of proving exhaustion. *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

A petitioner's failure to exhaust his state remedies may be excused in limited circumstances on the ground that exhaustion would be futile. *Lambert*, 134 F.3d at 518-19. Where such futility arises from a procedural bar to relief in state court, the claim is subject to the rule of procedural default. *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). In addition, if the state court does not address the merits of a claim because the petitioner failed to comply with the state's procedural rules in presenting the claim, it is also procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If a claim is found defaulted, the federal court may address it only if the petitioner establishes cause for the default and prejudice resulting therefrom, or that a failure to consider the claim will result in a fundamental miscarriage of justice. *Werts*, 228 F.3d at 192. To meet the "cause" requirement to excuse a procedural default, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to

---

[3]    In May 2000, the Pennsylvania Supreme Court issued an order, Order No. 218, rendering review from the Pennsylvania Supreme Court "unavailable" for purposes of exhausting state court remedies for federal habeas petitions under 28 U.S.C. § 2254(c). *Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004) (interpreting *In re: Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, No. 218 Judicial Administration Docket No. 1 (Pa. May 9, 2000) ("Order 218")). This means that, for purposes of federal habeas review under § 2254, a person in Pennsylvania custody "need not seek review from the Pennsylvania Supreme Court" in order to have exhausted state remedies and seek federal habeas review. *Id.*

comply with the State's procedural rule." *Id.* at 192-93 (quoting and citing *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). Additionally, a petitioner can rely on post-conviction counsel's ineffectiveness to establish cause to overcome the default of a substantial claim of ineffective assistance of trial counsel. *Martinez v. Ryan*, 566 U.S. 1, 14 (2012). To establish prejudice, a petitioner must prove "'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Bey v. Sup't Greene SCI*, 856 F.3d 230, 242 (3d Cir. 2017).

For a petitioner to satisfy the fundamental miscarriage of justice exception to the rule of procedural default, the Supreme Court requires that the petitioner show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quoting *Murray*, 477 U.S. at 496). This requires that the petitioner supplement his claim with "a colorable showing of factual innocence." *McCleskey v. Zant*, 499 U.S. 467, 495 (1991) (citing *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)). In other words, a petitioner must present new, reliable evidence of factual innocence. *Schlup*, 513 U.S. at 324.

B.    Merits Standard

Once a court has determined that the exhaustion requirement is met and, therefore, that review on the merits of the issues presented in a habeas petition is warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d). Section 2254(d) provides, in

pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." *Matteo v. Superintendent*, 171 F.3d 877, 888 (3d Cir. 1999).  Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.*

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct.  A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error. *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); *Matteo*, 171 F.3d at 888; *Thomas v. Varner*, 428 F.3d 492, 497-98 (3d Cir. 2005).  This presumption of correctness applies to both explicit and implicit findings of fact.

*Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." *Mastracchio v. Vose*, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); *Porter v. Horn*, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); *see also Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000); *cf. Jackson v. Virginia*, 443 U.S. 307, 316 (1979). "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." *Breighner v. Chesney*, 301 F. Supp. 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[4]). Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. *Porter*, 276 F. Supp. 2d at 296; *see also Williams v. Taylor*, 529 U.S. 362, 408-09 (2000); *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir. 2001). Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence

---

[4]    "If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination." 28 U.S.C. § 2254(f).

therein should the federal habeas court overturn a state court's factual determination. *Porter*, 276 F. Supp. 2d at 296; *see also Williams*, 529 U.S. at 408-09.

      C.    <u>Ineffective Assistance of Counsel Standard</u>

      The Sixth Amendment right to counsel is the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). This right to effective assistance of counsel also extends to the first appeal. *Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). In *Strickland*, the Supreme Court articulated a two-prong test in assessing whether a petitioner has been denied the effective assistance of counsel. *Strickland*, 466 U.S. at 687-88. A petitioner must demonstrate: (1) that his counsel's representation "fell below an objective standard of reasonableness" and (2) that such defective performance caused the petitioner prejudice. *See id.*

      In evaluating the first prong of the *Strickland* test, the court must be "highly deferential" toward counsel's conduct. *Id.* at 689. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). "*Strickland* and its progeny make clear that counsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better." *Rolan v. Vaughn*, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing *Strickland*, 466

U.S. at 689). Notably, courts will not deem counsel ineffective for failing to raise a meritless argument. *Strickland*, 466 U.S. at 691; *United States v. Saunders*, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Moreover, the petitioner must show that he or she had a reasonable likelihood of prevailing on the motion at issue, and having prevailed on the motion, it was also reasonably likely that the result of the trial would have been different. *See Thomas*, 428 F.3d at 502.

To prevail on a claim for ineffective assistance of counsel, a petitioner must satisfy both prongs of the *Strickland* test. *Carpenter v. Vaughn*, 296 F.3d 138, 149 (3d Cir. 2002). The inquiry may begin with either the deficient performance or prejudice prong, and the court is not required to consider the second prong of the test if the petitioner is unable to satisfy the first one. *Strickland*, 466 U.S. at 697.

## IV.   Discussion[5]

### A.   Ground One

In ground one, Burton alleges that the evidence was insufficient to sustain his conviction for conspiracy to commit first-degree homicide.  (Doc. 1, at 5).

The "clearly established Federal law" governing sufficiency of the evidence claims is set forth in the United States Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979).  Under *Jackson*, evidence is sufficient to support a conviction if, "after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319. "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'"  *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (quoting *Jackson*, 443 U.S. at 319).

On direct appeal, Burton argued that the evidence was insufficient to support the jury's finding of guilty of conspiracy to commit first-degree homicide.  *Commonwealth v.*

---

[5]   "In considering a § 2254 petition, we review the 'last reasoned decision' of the state courts on the petitioner's claims."  *Simmons v. Beard*, 590 F.3d 223, 231-32 (3d Cir. 2009) (citing *Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008)).  Thus, "[w]e review the appellate court decision, not the trial court decision, as long as the appellate court 'issued a judgment, with explanation, binding on the parties before it.'"  *Burnside v. Wenerowicz*, 525 F. App'x 135, 138 (3d Cir. 2013).  The Pennsylvania Superior Court's opinion issued July 7, 2022, and the trial court opinion issued on April 11, 2011, will be the primary reference points in addressing Burton's claims.  *See Commonwealth v. Burton*, 2011 WL 7325748 (Pa. Ct. Com. Pl. Dauphin Cnty. Apr. 27, 2011); *Commonwealth v. Burton*, 283 A.3d 347, 2022 WL 2523156 (Pa. Super. July 7, 2022).

*Burton*, 2011 WL 7325748.  In its Rule 1925(a) opinion, the trial court rejected Burton's

sufficiency of the evidence claim and found as follows:[6]

> The trial court did not err in denying Appellant's motion for acquittal on the
> convictions of murder in the first degree and criminal conspiracy.  To
> determine if the evidence was sufficient to support the jury's finding on a
> conviction, courts look to whether the evidence, when viewed in the light most
> favorable to the Commonwealth, would allow a reasonable jury to find every
> element of the crimes beyond a reasonable doubt.  *Commonwealth v.
> Montalvo*, 604 Pa. 386, 399-400, 986 A.2d 84, 92 (Pa. 2009).
>
> …
>
> The trial court did not err in denying Appellant's motion for acquittal on the
> conviction of criminal conspiracy.  For the charge of criminal conspiracy, the
> Commonwealth must prove beyond a reasonable doubt that: "1) the
> defendant intended to commit or aid in the commission of the criminal act; 2)
> the defendant entered into an agreement with another to engage in the crime;
> and 3) the defendant or one or more of the other co-conspirators committed
> an overt act in furtherance of the agreed upon crime."  *Commonwealth v.
> Johnson*, 604 Pa. 176, 185, 985 A.2d 915, 920 (Pa. 2009); 18 PA. CONS.
> STAT. § 903 (2010).
>
> As to the first requirement of criminal conspiracy, evidence was presented
> which indicated that Appellant intended to commit or aid in the commission of
> the criminal act of homicide.  Testimony was presented that Appellant
> became angry with Granthon's demands regarding the return of his money,
> and left Preston Burgess' home with another individual to find Granthon on
> the night of the murder.  (N.T. 48-49.)  Also, as mentioned earlier, seventeen
> phone calls were exchanged between Appellant and Granthon after midnight
> in the early morning hours of May 5, 2009, shortly before Granthon was found
> dead.  (N.T. 272).
>
> The Commonwealth also presented evidence with respect to the
> requirements that Appellant enter into an agreement with another to commit

---

[6]     The trial court filed an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) on April 11, 2011.  *Commonwealth v. Burton*, 2011 WL 7325748 (Pa. Ct. Com. Pl. Dauphin Cnty. Apr. 27, 2011).

or aid in the commission of the crime, and that Appellant or the co-conspirator
committed an overt act in furtherance of the agreed upon crime. Here,
Preston Burgess testified that he gave Appellant Granthon's phone number,
and that Appellant left with another individual known as "Slim" to find
Granthon. (N.T. 48-49; 53.) Second, testimony was also provided by Jeffrey
Lynch and Greta McAllister that Appellant was identified as being one of two
men with guns that stalked the victim down Mulberry Street, prior to shots
being heard. (N.T. 141-42; 202; 217-18; 227-229.) Third, the Commonwealth
presented evidence that Appellant made a call around 1:13 a.m., less than a
half mile from the location where Granthon was discovered by the police
around 1:11 a.m. (N.T. 313-14; 25-26.)

Therefore, sufficient direct and circumstantial evidence was presented to
allow a reasonable jury to find Appellant guilty of the charge of criminal
conspiracy. Consequently, the trial court did not err in denying Appellant's
motion for acquittal on the conviction of criminal conspiracy.

*Commonwealth v. Burton*, 2011 WL 7325748 (Pa. Ct. Com. Pl. Dauphin Cnty. Apr. 27,

2011).

Clearly, the state court applied the Pennsylvania equivalent of the *Jackson* standard.

*See Evans*, 959 F.2d at 1233 (noting that the test for sufficiency of the evidence is the same

under both Pennsylvania and federal law). Because the Superior Court applied the correct

legal standard, its adjudication satisfies review under the "contrary to" clause of §

2254(d)(1). *See, e.g., Williams*, 529 U.S. at 405-06.

The Court next considers whether the trial court's decision amounted to an

"unreasonable application" of *Jackson.*

*Jackson* claims face a high bar in federal habeas proceedings because they
are subject to two layers of judicial deference. First, on direct appeal, "it is the
responsibility of the jury…to decide what conclusions should be drawn from
evidence admitted at trial. A reviewing court may set aside the [trial court's]
verdict on the ground of insufficient evidence only if no rational trier of fact

16

could have agreed with the [trial court]." *Cavazos v. Smith*, 565 U.S. 1 (2011). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766 (2010)).

- - -

[T]he only question under *Jackson* is whether [the state court's] finding was so insupportable as to fall below the threshold of bare rationality. The state court of last review did not think so, and that determination in turn is entitled to considerable deference under AEDPA, 28 U.S.C. § 2254(d).

*Coleman,* 566 U.S. at 651, 656.

Burton's sufficiency of the evidence argument raised here echoes the argument raised in state court. (Doc. 1, at 5). He argues that the Commonwealth failed to introduce evidence of a conspiracy between himself and his co-defendant. (*Id.*).

In considering this issue, the trial court found that "evidence was presented which indicated that [Burton] intended to commit or aid in the commission of the criminal act of homicide." *Commonwealth v. Burton*, 2011 WL 7325748. The trial court highlighted the following evidence: "Preston Burgess testified that he gave Granthon's phone number to Burton, and that Burton left with another individual known as "Slim" to find Granthon. (N.T. 48-49; 53.) Second, testimony was also provided by Jeffrey Lynch and Greta McAllister that Burton was identified as being one of two men with guns that stalked the victim down Mulberry Street, prior to shots being heard. (N.T. 141-42; 202; 217-18; 227-229.) Third, the Commonwealth presented evidence that Burton made a call around 1:13 a.m., less than a half mile from the location where Granthon was discovered by the police around 1:11 a.m."

*Id.* The trial court found that this evidence was sufficient to sustain the conviction of conspiracy to commit first-degree homicide.  The state court detailed the testimony and stated that "sufficient direct and circumstantial evidence was presented to allow a reasonable jury to find [Burton] guilty of the charge of criminal conspiracy." *Id.*

Significantly, Burton does not argue that the state court's reliance on the above evidence and testimony "was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 566 U.S. at 656.  Instead, he summarily argues that the Commonwealth failed to introduce evidence of a conspiracy.  (Doc. 1, at 5).

"28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  Indeed, under the *Jackson* standard, "the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup*, 513 U.S. at 330.  The proper question is not whether the witnesses were credible, but "whether there is sufficient evidence which, if credited, could support the conviction." *Id.*  Further, *Coleman* cautioned courts that *Jackson* does not permit "imping[ing] on the jury's role as factfinder" through "fine-grained factual parsing." *Coleman*, 566 U.S. at 655.  Rather, "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.' [*Jackson*, 443 U.S.] at 319." *Id.*

18

Taking into consideration all of this evidence as a whole, and viewing the evidence in

the light most favorable to the prosecution, the Court finds that the state court's conclusion

that there was sufficient evidence at trial to establish the necessary elements of conspiracy

to commit first-degree homicide, and to sustain the verdict, is not objectively unreasonable.

*Jackson*, 443 U.S. at 319. There simply is no possibility that fair-minded jurists could find

that this determination conflicts with applicable Supreme Court precedent. Nor, based on

review of the state court evidence, is it an unreasonable determination of the facts. Burton

is not entitled to relief on this claim.

## B. Ground Two

In ground two, Burton alleges that trial counsel was ineffective for failing to object to

a jury instruction on persons not to possess firearms. (Doc. 1, at 6-7). This claim was fully

adjudicated during the PCRA proceedings. The Superior Court ultimately found that Burton

was not entitled to relief on this claim and found as follows:

Counsel is presumed to have been effective. *See Commonwealth v. Brooks*,
839 A.2d 245, 248 (Pa. 2003). In order to overcome that presumption and
prevail on a claim of ineffectiveness, Burton must establish that: (1) the
underlying claim has arguable merit; (2) counsel had no reasonable basis for
his conduct; and (3) he was prejudiced by counsel's ineffectiveness, i.e. there
is a reasonable probability that because of the act or omission in question, the
outcome of the proceeding would have been different. *See id.*

Burton addresses his first two allegations of ineffectiveness together, which
both relate to his illegal possession of a firearm conviction. In these two
claims, Burton argues that all prior counsel were ineffective for failing to raise
a claim challenging trial counsel's failure to object to the jury instruction on
illegal possession of a firearm as well as to request a bifurcated trial on the

illegal possession charge. His arguments in support of these contentions are less than clear. He does, however, repeatedly make the summary allegation that counsel's inactions unduly prejudiced him. We do not agree, and instead find that neither of these claims offer Burton any basis for relief.

One of the charges Burton faced at trial was the illegal possession of a firearm pursuant to 18 Pa. C.S.A. § 6105. To prove Burton was guilty of Section 6105, the Commonwealth needed to prove Burton possessed a firearm and that he had previously been convicted of one of 38 enumerated offenses, including aggravated assault, that prohibits him from possessing a firearm. *See Commonwealth v. Miklos*, 159 A.3d 962, 967 (Pa. Super. 2017); 18 Pa. C.S.A. § 6105(b).

Prior to trial, defense counsel stipulated that Burton had a prior conviction which made it illegal for him to possess a firearm under Section 6105. *See* N.T. Jury Trial, 1/24/11, at 7-8. The Commonwealth agreed to the stipulation. *See id.* at 7. The parties then agreed - and the trial court clarified - that there would not be any mention at trial of the specific offense for which Burton had been convicted - aggravated assault - that made him ineligible to possess a firearm. *See id.* at 8. The parties also agreed that the only issue for the jury to decide for purposes of the Section 6105 charge would be whether Burton actually possessed a firearm. *See id.*

On appeal, Burton does not contend that he does not, in fact, have an aggravated assault conviction or that such a conviction does not make him ineligible to possess a firearm under Section 6105. Nor does he point to any place in the record where the parties made any reference to the aggravated assault conviction at trial or elicited any testimony about that conviction. Instead, Burton first argues that he was prejudiced by counsel's failure to object to the court's charge on illegal possession of a firearm, in which the court told the jury:

> THE COURT: ...The defendant is charged with former convict prohibited from having a firearm. The defendant has been charged with former convict - to find the defendant guilty of this offense you must find the following elements have been proven beyond a reasonable doubt:
>
> That the defendant was a person prohibited by law from possessing, using, controlling, selling, transferring, manufacturing or obtaining a

license to possess, use, control, sell, transport or manufacture a
firearm.

To be prohibited, the Commonwealth must show that the defendant
at the time of this conduct had been convicted

[PROSECUTOR]: I believe, Your Honor, that we –

THE COURT: - had been convicted of a crime under the statute, and
the defendant on a date more than 60 days from the time he became
a person prohibited by law from possessing, using, controlling,
selling, transferring, manufacturing or obtaining a license to possess,
use, control, sell, transfer or manufacture a firearm knowingly
possessed or used or sold or transferred or manufactured or
obtained a license to possess and use a firearm.

N.T. Jury Trial, 1/26/11, at 384-385.

Burton summarily asserts that he was unfairly prejudiced by counsel's failure
to object to this instruction. However, as the PCRA court found and the
Commonwealth argues, Burton suffered no such prejudice given that the trial
court did not, "in what can only be assumed to have been an error by
omission," even mention the stipulation, much less the underlying conviction,
during the instruction. Commonwealth's Brief at 9. As such, the jury "never
heard that [Burton] had a prior conviction that made him ineligible to possess
a firearm." *Id.* There was no testimony about the prior conviction and it was
not mentioned during the instruction. Given these circumstances, we fail to
see any error in the PCRA court's conclusion that Burton was not prejudiced
by counsel's failure to object to this instruction.

To the extent Burton argues he was unfairly prejudiced by this charge
because the court used "former convict prohibited from having a firearm" as
opposed to "person not to possess a firearm," this Court has previously
rejected a similar claim. In *Commonwealth v. Antidormi*, we held that a
defendant is not prejudiced by a trial court's use of the term "felon not to
possess a firearm" as opposed to "person not to possess a firearm." 84 A.3d
736, 754 (Pa. Super. 2014). We explained that:

this Court has utilized the terms 'felon not to possess a firearm' and
'person not to possess a firearm' interchangeably to refer to identical

conduct. Therefore, the terms…refer, interchangeably, to the Commonwealth's charge that, as a felon, [a defendant] illegally possessed a firearm.

*Id.* at 753 -754 (citations omitted).

The same reasoning applies to Burton's claim here, given that a former version of Section 6105 was titled "Former convict not to own a firearm, etc." *See* 18 Pa.C.S.A. § 6105 (effective June 6, 1973, subsequently amended June 13, 1995); *see also Commonwealth v. Gillespie*, 821 A.2d 1221, 1224 (Pa. 2003) (stating that the "clear purpose of § 6105 is to protect the public from convicted criminals who possess firearms"). We therefore reject any contention that counsel was ineffective for failing to object to the instruction because of the court's use of the term "former convict."

Burton also claims counsel should have requested a bifurcated trial on the illegal possession of a firearm charge. Although not entirely clear, it appears Burton is contending that counsel should have made such a request because of the "spillover prejudice" that occurred from the jury knowing that Burton was previously convicted of aggravated assault for purposes of the illegal possession charge when considering their verdict on the other five offenses. However, as explained above, counsel stipulated to the fact that Burton had a qualifying conviction and the parties agreed not to mention the specific offense underlying that conviction. Burton has not pointed to any place in the record where the jury heard anything about the aggravated assault conviction. We fail to see how this caused any "spillover prejudice" to Burton or how counsel's failure to request a bifurcated trial in light of the stipulation constituted ineffectiveness.

*Commonwealth v. Burton*, 2022 WL 2523158, at *4-6 (footnotes omitted).

Upon review, the Court finds that Burton's challenge to the above-referenced jury instruction lacks merit. The Superior Court found that Burton was not prejudiced based on its reading of the jury charge as a whole. *Id.* The Superior Court noted that the trial court did not even mention the stipulation, much less the underlying conviction, during the instruction, and the jury "never heard that [Burton] had a prior conviction that made him

ineligible to possess a firearm." *Id.* In light of the fact that there was no testimony about Burton's prior conviction, and the prior conviction was not even mentioned during the instruction, the Superior Court found that Burton was not prejudiced by counsel's failure to object to the instruction. *Id.* The Superior Court's decision regarding Burton's challenge to the jury instruction was reasonable in light of the evidence presented. Burton is not entitled to habeas relief on this ground.

C.   Ground Three

In ground three of the habeas petition, Burton alleges that trial counsel was ineffective for failing to object to a jury instruction on accomplice liability for conspiracy to commit first-degree homicide. (Doc. 1, at 8). Burton presented this ineffectiveness claim in his PCRA proceedings. On appeal, the Superior Court rejected this claim on two bases: (1) the claim was waived due to Burton's failure to develop the claim; and (2) trial counsel did object to the instruction. *Commonwealth v. Burton*, 2022 WL 2523158, at *6. The Superior Court succinctly found:

> Next, Burton maintains all prior counsel were ineffective for failing to argue trial counsel was ineffective for failing to object to the homicide charge based on accomplice liability. First of all, trial counsel did object to the court's instruction. *See* N.T., 1/27/11, at 417-418. Moreover, Burton does not explain what relief he hopes to secure by challenging counsel's representation in regards to his homicide conviction given that this Court has already vacated that conviction. No relief is due.

*Commonwealth v. Burton*, 2022 WL 2523158, at *6.

When the state court does not address the merits of a claim because the petitioner failed to follow the state's procedural rules in presenting the claims, the claim will be considered procedurally defaulted if the rule upon which the state court relied is independent of the constitutional issue and adequate to support the decision. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *Harris v. Reed*, 489 U.S. 255, 260 (1989). "[A] state procedural ground is not 'adequate' unless the procedural rule is 'strictly or regularly followed,'" *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988), and the rule "speaks in unmistakable terms." *Doctor v. Walters*, 96 F.3d 675, 683 (3d Cir. 1996) (*abrogated on other grounds by Beard v. Kindler*, 558 U.S. 53 (2009)). Thus, the procedural disposition must comport with similar decisions in other cases such that there is a firmly established rule that is applied in a consistent and regular manner "in the vast majority of cases." *Banks v. Horn*, 126 F.3d 206, 211 (3d Cir. 1997) (quoting *Dugger v. Adams*, 489 U.S. 401, 410 n.6 (1989)).

Here, to the extent that this claim is considered default, such default is based on the Superior Court's finding of waiver, specifically Burton's failure to develop the claim on appeal. As a result of the state court's finding that this claim was waived, the claim is procedurally defaulted. Burton fails to allege, as is his burden, the existence of either cause or prejudice for the procedural default and none appears on the record. (Doc. 1, at 8-9; Doc. 18, at 10-12). Neither does it appear that a miscarriage of justice would occur. Accordingly, habeas review of this claim is foreclosed.

Assuming *arguendo* that Burton did not waive this claim, the Superior Court noted that trial counsel did, in fact, object to the challenged jury instruction. *Commonwealth v. Burton*, 2022 WL 2523158, at *6. This Court concludes that the Superior Court's ruling does not involve an unreasonable application of *Strickland*'s first prong. The Superior Court found no merit to Burton's claim that trial counsel was ineffective for failing to object to a jury instruction on accomplice liability, when he did lodge an objection. This Court will not disturb the Superior Court's ruling, given the narrow standard of review—whether the ruling was a reasonable application of the *Strickland* standard.

### D.    Grounds Four and Five

In his fourth claim, Burton alleges that trial counsel failed to call an individual named Fred Jones as a witness at trial. (Doc. 1, at 9-12). In his fifth claim, Burton alleges that the PCRA court erred in denying a new trial based on newly discovered evidence. (Doc. 1, at 13). Respondent contends that these two claims are predicated on the same grounds. (Doc. 10, at 17). The Superior Court addressed these claims in conjunction and found that Burton was not entitled to relief as follows:

> Burton also asserts all prior counsel were ineffective for neglecting to raise trial counsel's ineffectiveness for failing to investigate and call Fred Jones as a witness at his trial. According to Burton, he received a post-trial statement from Jones reporting that Jones had been with Lynch on the night of the shooting and had seen a man running away from the scene of the crime that did not look like Burton. Burton contends that had counsel called Jones to the stand and allowed the jury to hear his testimony, this would "have established the reasonable doubt necessary for an acquittal." Appellant's Brief at 48. This claim fails for several reasons.

25

In the first place, it does not appear from the record that Burton attached any statement by Jones to his PCRA petition, as required by 42 Pa. C.S.A. § 9545 (d)(1)(i) and Pa.R.Crim.P. 902(A)(15). Nor does Burton assert PCRA counsel was ineffective for failing to attach the statement. Burton does attach a handwritten statement, dated July 23, 2012, signed by a person named Jones, as an exhibit to his appellate brief. However, this statement is not verified, and it also does not provide Jones's address or date of birth as required by 42 Pa. C.S.A. § 9545 (d)(1)(i) and Pa.R.Crim.P. 902(A)(15).

Nonetheless, even if Burton had complied with these procedural requirements, we would not find this claim entitles him to any relief. Burton claims that counsel should have called Jones to the stand because, according to Jones's statement, Jones could have definitively established that Burton was not present at the scene of the crime. The statement reads in relevant part:

> I was out there with crackhead Jeff [Lynch]…I know for a fact it wasn't you cuz the dude that ran outta the alley…was a light skinned dude with a gr[a]y hoodie on. And you're Black as fuck.

Appellant's Brief, Exhibit C.

In making his argument, Burton does not cite the standard applicable to claims alleging counsel's ineffectiveness for failing to call a witness to testify. To prove such a claim, Burton must show that: 1) Jones existed; 2) counsel was aware or should have been aware of Jones's existence; 3) Jones was willing and able to cooperate on behalf of Burton; and 4) the absence of the proposed testimony prejudiced him. *See Commonwealth v. Johnson*, 139 A.3d 1257, 1284 (Pa. 2016).

Even if Burton was able to show the first three elements of this standard,8 we do not find he has established he was prejudiced by any failure to call Jones to the stand. Burton asserts that Jones's statement "completely removes [Burton] from any crime." Appellant's Brief at 44. He fails to explain, however, how the statement accomplishes that in light of the fact that Lynch and McCallister each testified that they saw two men, and Jones described only one of those two men.

In any event, Jones's proposed testimony regarding the description of the person he saw on the night of the shooting would have merely been cumulative of the description given by Rochon. As such, Burton cannot show prejudice and his ineffectiveness claim necessarily fails. *See Johnson*, 139 A.3d at 1284 (holding that Johnson had not suffered prejudice for purposes of his claim that counsel had been ineffective for failing to call witnesses, when those witnesses' proposed testimony that Johnson was not present at the crime scene would have simply been cumulative of the testimony of other witnesses); *Commonwealth v. Gibson*, 951 A.2d 1110, 1134 (Pa. 2008) (stating that trial counsel will not be found ineffective for failing to call a witness whose testimony is merely cumulative of that of other witnesses).

Burton also alleges he is entitled to relief on the basis of two statements, including Jones's, because they constitute after-discovered exculpatory evidence pursuant to 42 Pa.C.S.A. § 9543(a)(2)(vi). The PCRA court did not address this issue, as it was not included in Burton's *pro se* PCRA petition or counsel's supplemental petition. To the extent Burton claims on appeal his PCRA counsel was ineffective for failing to raise this issue, a recent decision by our Supreme Court allows us to review this claim. *See Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021) (holding that a PCRA petitioner may, after a PCRA court denies relief, and when acting pro se on appeal from that denial, raise claims of PCRA counsel's ineffectiveness on appeal).

Burton claims that prior counsel, including PCRA counsel, were ineffective for failing to raise the claim that Jones's statement and the statement of Avery McCraw, which McCraw also provided after Burton's trial, were both after-discovered evidence that entitled him to relief pursuant to 42 Pa.C.S.A. § 9543(a)(2)(vi). In the hand-written letter attached as an exhibit to Burton's brief, McCraw contends he was near the spot Granthon was murdered at the time of the murder. The statement seems to be missing some parts, perhaps even a page, but in essence McCraw maintains that he saw someone dressed all in black speed walking down Mulberry Street, and also saw a man in a gray-hooded sweatshirt with a gun in his hand. Neither this statement nor Jones's statement offers Burton relief as after-discovered evidence.

To obtain relief based on after-discovered evidence, Burton must show the evidence: 1) could not have been obtained prior to the conclusion of trial by the exercise of reasonable diligence; 2) is not merely cumulative or corroborative; 3) will not be used solely to impeach a witness's credibility; and 4) is of such a nature that a different verdict will likely result if a new trial is

granted. *See Commonwealth v. Foreman*, 55 A.3d 532, 537 (Pa. Super. 2012).

Here, in rejecting Burton's contention of after-discovered evidence as raised in Burton's 2014 supplemental PCRA petition, the PCRA court stated:

> In the present case, two affidavits submitted by counsel indicate that there were two additional witnesses the night of the homicide. Avery McCraw sent [Burton] and his attorney at the time a letter on October 26, 2011. Subsequently, he verified the statement pursuant to 18 Pa.C.S. § 4904. A second letter by Fred Jones was received on July 23, 2012. It is not verified.
>
> [Burton] must prove by a preponderance of the evidence that this evidence is not cumulative. Mr. McCraw's letter indicates he saw a man in black on the street at the time of the shooting. Jeffrey Lynch testified that he saw [a man] in black on the street at the time of the shooting. Mr. Jones's letter indicated he saw a 'light skinned dude.' Again, during trial, Georgio [ ] Rochon, [Burton's] own witness, testified that the person he saw at the scene of the murder was a "light-complected [B]lack man" and not [Burton]. Nothing in the letters/affidavits indicates any newly discovered evidence that was not presented to the jury.

Trial Court Opinion, 457 MDA 2015, 2/10/2015, at 4 (unpaginated) (citations and footnote omitted.)

While we found on appeal that we could not review this determination because the PCRA court did not have jurisdiction to decide this claim after it granted *nunc pro tunc* relief, *see Burton*, 457 MDA 2015 at * 7, we face no such impediment here. We see no error in the PCRA court's conclusion that the allegedly after-discovered evidence offered by Burton was merely cumulative of evidence presented at trial. We add only that McCraw's allegation that he saw a man in a gray-hooded sweatshirt with a gun at the scene of the murder was substantially cumulative of testimony provided by Lynch, McCallister and Rochon. No relief is due. *See Foreman*, 55 A.3d at 537.

*Commonwealth v. Burton*, 2022 WL 2523158, at *7-9 (footnotes omitted).

To reiterate, when considering the prejudice prong of *Strickland*, a court must evaluate the effect of counsel's inadequate performance in light of the totality of evidence. This Court does not inquire as to whether the Court "believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted) (internal quotation marks omitted). Under this demanding standard, Burton fails to show that the state court's decision was an unreasonable application of *Strickland* or that it was an unreasonable application of the facts in light of the evidence presented. In evaluating prejudice, the Superior Court considered the totality of the available evidence during the PCRA proceeding. In the Superior Court's opinion, it noted that in establishing whether defense counsel was ineffective for failing to call a witness, a defendant must prove the witness existed, counsel was aware or should have been aware of the witness's existence, the witness was ready and willing to testify, and the absence of the witness's testimony prejudiced the defendant. *Commonwealth v. Burton*, 2022 WL 2523158, at *7. In applying Pennsylvania's failure to call a witness standard to Burton's claim, the Superior Court found that even if Burton was able to meet the first three elements, he failed to establish that he was prejudiced by any failure to call Fred Jones as a witness. *Id.* The Superior Court noted that Jones's proposed testimony regarding the description of the person he saw on the night of the shooting would have merely been cumulative of the description given by another witness. *Id.* Importantly, the Superior Court

also noted that: "Burton asserts trial counsel should have been aware of Jones. However, in his next claim, Burton asserts that Jones's statement constitutes after-discovered evidence, which requires him to show that the evidence could not have been obtained prior to trial by the exercise of due diligence. He cannot, of course, have it both ways." *Id.* at 7 n.8.

On the whole, it is clear that the Superior Court's prejudice analysis reflected a reasonable application of "clearly established" federal law. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011); *Jacobs v. Horn*, 395 F.3d 92, 106 (3d Cir. 2005). It was also a reasonable determination of the facts in light of the evidence presented. Moreover, the United States Court of Appeals for the Third Circuit has held that the precise choice made here, to forego calling certain witnesses, is an appropriate tactical decision that does not entitle a petitioner to habeas corpus relief on the grounds of ineffective assistance of counsel. *Alexander v. Shannon*, 163 F. App'x 167, 175 (3d Cir. 2006). *See also Sanders v. Trickey*, 875 F.2d 205, 212 (8th Cir. 1989) (trial counsel's failure to call a witness "is precisely the sort of strategic trial decision that *Strickland* protects from second-guessing"). The Court thus finds that Burton is not entitled to relief on this claim.

    E.    <u>Ground Six</u>

In his penultimate claim, Burton alleges that trial counsel was ineffective for failing to request a direct appeal on all charges. (Doc. 1, at 14). During PCRA appeal proceedings, the Superior Court denied relief on this claim and reasoned as follows:

In his final ineffectiveness claim, Burton alleges prior counsel were ineffective for failing to raise trial/appellate counsel's failure to appeal all of his convictions on direct appeal. He acknowledges that counsel challenged his homicide and conspiracy convictions on appeal, and that his homicide conviction was in fact vacated, but he asserts counsel should have also appealed the four other convictions. He maintains counsel's failure in this regard requires the restoration of his direct appeal rights *nunc pro tunc*. This claim fails.

In support of his contention, Burton cites only to cases which stand for the proposition that a petitioner is entitled to *nunc pro tunc* relief when counsel has completely deprived the petitioner of any opportunity to appeal his judgment of sentence by failing to pursue or perfect a requested direct appeal. *See, e.g., Commonwealth v. Champney*, 783 A.2d 837, 841 (Pa. Super. 2001) (holding trial counsel was ineffective for failing to file a requested notice of appeal, leaving the petitioner without any opportunity to appeal and entitling him to *nunc pro tunc* relief). This is not the situation here. Instead, trial/appellate counsel filed a direct appeal on behalf of Burton raising seven issues, two of which this Court found had merit. Therefore, Burton has simply not shown that any request he made of counsel to file a direct appeal was ignored or rejected by counsel, as he was required to do. *See Commonwealth v. Maynard*, 900 A.2d 395, 397-398 (Pa. Super. 2006) (when making a claim that counsel was ineffective for failing to file a direct appeal, the petitioner must plead and prove that he requested counsel to file a direct appeal on his behalf and counsel ignored or rejected that request).

Moreover, as the PCRA court found, Burton's direct appeal raised the claim that the verdict - in its entirety - was against the weight of the evidence. The PCRA court noted that Burton's appellate brief specifically stated that the "jury verdict finding [Burton] guilty on the above referenced charges was so contrary to the weight of the evidence presented at trial that a new trial is required." Appellant's Brief, 385 MDA 2011, 7/15/11, at 12. This Court considered, and rejected, this claim before granting Burton a new trial on the basis of one of the other claims raised by counsel. Based on all of these circumstances, Burton has failed to show the PCRA court erred by concluding this final claim of ineffectiveness does not warrant any relief.

*Commonwealth v. Burton*, 2022 WL 2523158, at *9.

Federal law clearly established by the Supreme Court holds that "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690-91; *see Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003) (appropriate focus is on whether investigation supporting trial decision was itself reasonable). Burton's argument that counsel was ineffective "for failing to file a requested direct appeal on all charges[,]" (Doc. 1, at 14), is conclusory and soundly refuted by the state court decision.

The record before the state court demonstrates that trial counsel made tactical decisions reasonably designed to serve his client's best interest. Additionally, Burton fails to demonstrate he suffered any prejudice resulting from trial counsel's decisions. As the state court decision highlights, trial/appellate counsel filed a direct appeal on behalf of Burton raising seven issues, two of which the Superior Court found had merit. *Commonwealth v. Burton*, 2022 WL 2523158, at *9. Additionally, the Superior Court found that Burton failed to show that counsel ignored any of his requests, as he was required to do. *Id.* It is noteworthy that Burton's direct appeal raised the claim that the verdict was against the weight of the evidence. *Id.* The Superior Court considered, and rejected, this claim. *Id.* Given the totality of the evidence in the state court record, fair-minded jurists would not disagree that trial counsel had a reasonable basis to appeal certain claims.

Based on the above, the Court finds that the state court's resolution of trial counsel's failure to appeal all of Burton's convictions on direct appeal was neither contrary to nor an

unreasonable application of the *Strickland*, nor was it based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceedings.

Accordingly, Burton is not entitled to relief based on this claim.

F.     Ground Seven

Lastly, Burton asserts that trial counsel's alleged ineffective assistance, when viewed

as a whole, cumulatively caused him prejudice.  (Doc. 1, at 15).  The Superior Court

conclusively found that Burton's averment of cumulative prejudice did not merit relief.

*Commonwealth v. Burton*, 2022 WL 2523158, at *10.  The Superior Court stated as follows:

Burton's last two issues are that he is entitled to relief because of the
cumulative prejudicial effect of counsel's alleged errors and that he was
entitled to an evidentiary hearing on his ineffectiveness claims.  Both of these
claims fail.  *See Commonwealth v. Tedford*, 960 A.2d 1, 56 (Pa. 2008)
(citation omitted) ("[N]o number of failed claims may collectively warrant relief
if they fail to do so individually.");  *Commonwealth v. Jones*, 942 A.2d 903, 906
(Pa. Super. 2008) (stating that no hearing is necessary if it can be determined
without a hearing that any one of the three prongs of the ineffectiveness test
cannot be met).  As such, no relief is due on any of the claims raised by
Burton.

*Commonwealth v. Burton*, 2022 WL 2523158, at *10.

The Third Circuit has held that "[i]ndividual errors that do not entitle a petitioner to

relief may do so when combined, if cumulatively the prejudice resulting from them

undermine the fundamental fairness of his trial and denied him his constitutional right to due

process."  *Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008).  Cumulative errors will be

deemed harmful only where "they had a substantial and injurious effect or influence in

determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish actual prejudice." *Id.* (internal quotation marks omitted). To satisfy this standard, a petitioner must show that the errors complained of "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray v. Carrier*, 477 U.S. at 494. In this regard, the Third Circuit "read[s] United States Supreme Court precedent as establishing the principle that the stronger the evidence against the defendant, the more likely that improper arguments or conduct have not rendered the trial unfair." *Marshall v. Hendricks*, 307 F.3d 36, 69 (3d Cir. 2002).

The Pennsylvania Supreme Court has held that "no number of failed claims may collectively warrant relief if they fail to do so individually." *Commonwealth v. Miller*, 987 A.2d 638, 672 (Pa. 2009) (citing *Commonwealth v. Washington*, 592 Pa. 698, 927 A.2d 586, 617 (2007); *Commonwealth v. Tedford*, 598 Pa. 639, 960 A.2d 1, 56 (2008)). Thus, there is a disparity between Pennsylvania precedent and the federal standard regarding claims of cumulative prejudice, as federal law permits a claim of cumulative prejudice even where the individual claims fail. *See Fahy*, 516 F.3d at 205. Since the state court presumably did not examine this claim in light of federal law, the pre-AEDPA standards of review apply. *Everett v. Beard*, 290 F.3d 500, 508 (3d Cir. 2002). "Under that standard, a federal habeas court owes no deference to a state court's resolution of mixed questions of constitutional law and fact...whereas the state court's factual findings are presumed to be correct unless [ ] the

state court's findings are not fairly supported by the record." *Id.* (citations and quotations omitted).

Burton is not entitled to relief on his claim of cumulative error. As highlighted throughout this opinion, the evidence presented during trial strongly supports the finding that Burton committed the acts as charged. *See Marshall*, 307 F.3d at 69 ("[T]he stronger the evidence against the defendant, the more likely that improper arguments or conduct have not rendered the trial unfair."). The Court will deny this final claim for relief.

## V.     Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from...the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). It also provides that "[a] certificate of appealability may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2).

When the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable

whether Burton's claims should be denied for the reasons given herein. Accordingly, the Court will not issue a certificate of appealability.

## VI.    _Conclusion_

The Court will deny the § 2254 petition for writ of habeas corpus. (Doc. 1). A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: March ___, 2025